No. 2,335.

ANDREW HIMMELMANN, APPELLANT, *v.* A. P. HOTALING, RESPONDENT.

NEGOTIABLE INSTRUMENTS.—BONA FIDE HOLDER WITHOUT NOTICE.—As a general rule, a *bona fide* holder of a negotiable instrument for a valuable consideration, without any notice of facts which tend to impeach its validity, as between the antecedent parties thereto, if he takes it by transfer before the same is overdue or presumptively dishonored, holds the title unaffected by these facts, and may recover thereon, although as between such antecedent parties, the legal validity of the instrument, or the title thereto, may be successfully impeached.

IDEM.—PRESUMPTIVE DISHONOR.—A promissory note payable on demand, a bank check or certificate of deposit, are not presumptively dishonored until the lapse of a reasonable time after payment thereof may be legally demanded.

IDEM.—REASONABLE TIME.—What shall be deemed a reasonable time, is a question of law for the Court.

IDEM.—Where the drawer and drawee of a bank check reside in the same city or town, a demand made during the business hours of the day succeeding that on which payment might have been first legally demanded, has uniformly been considered within such reasonable time.

IDEM. — DISHONOR. — Although a check may be actually dishonored by a refusal to pay on a proper demand being made before presumptive dishonor, yet, to charge the check with the infirmity of dishonor in the hands of a third party, to whom it has been transferred for a valuable consideration before the expiration of the reasonable time which must elapse before presumptive dishonor, notice of the previous actual dishonor must be brought home to him or he holds it free from the taint of dishonor.

APPEAL from the District Court of the Fifteenth District, City and County of San Francisco.

The facts are stated in the opinion.

*W. H. Patterson*, for Appellant.

No principle of commercial law is better settled, than that negotiable paper, which had an original lawful inception and consideration as between the original parties, is not open to any defence existing between maker and payee, or intermediate endorsers or holders, in the hands of a holder for value who acquired title to the paper before it became due, and without notice of its having been dishon-ored, or that any defence existed against it at the time of the transfer to him.

The following are leading authorities, laying down, affirming, and fully recognizing the principle : (*O'Keefe* v. *Dunn*, 6 Taunton 304, 1 Eng. Com. Law R. 626; *Crossley* v. *Hare*, 14 East. R. 498; *Goodman* v. *Harvey*, 4 Adal. & Ellis, 78, 31 Eng. Com. Law R. 212; *Rothschild* v. *Corney*, 17 Eng. Com. Law R. 168; *Andrews* v. *Pond*, 13 Peters R. 65; *Goodman* v. *Simonds*, 20 How. U. S. Rep. 362, 372; *Steinhart* v. *Baker*, 34 Barb. 442; *Davis* v. *McCready*, 17 N. Y. R. 230; *Hall* v. *Wilson*, 16 Barb. 550; *Raphael* v. *The Bank of England*, 33 English and E. R. 276; *Vinton* v. *Crowe*, 4 Cal. R. 409.)

A check payable to bearer, without day of payment being expressed, is not over due within the period of any reasonable time for its presentment. (*Rothschild* v. *Corney, supra*.) It does not become over due as to a *bona fide* holder for value, though it may have been previously presented for payment and payment refused, if the subsequent holder had not notice of dishonor. (*O'Keefe* v. *Dunn*; *Andrews* v. *Pond*; *Goodman* v. *Simonds, supra*.)

*Alexander Campbell*, for Respondent, filed no brief.

SPRAGUE J., delivered the opinion of the Court:

This was an action by an assignee against the drawer of of two checks, one for $500 and one for $1,200, payable to Charles Hanson or bearer. The checks were both drawn by defendant, and bore date and were delivered to Hanson on the 16th of December, 1868, for money which defendant held, belonging to Hanson. On the evening of the same day, after receiving the checks, Hanson lost them at a game of " faro," to one Briggs, to whom he immediately delivered them. On the next morning, December 17th, as soon as the banking office of the drawee was open, Briggs presented the checks for payment, which was refused, and Briggs was then notified that payment had been stopped. Briggs then immediately took the checks to his attorney and requested him to dispose of them, telling him at the same time how he, Briggs, acquired them, and that he had presented them for payment to the drawee, and that payment was refused. The attorney, on the same day, sold and delivered the checks to plaintiff for full value, who, on the same day, presented them to the drawee for payment, which was refused, and plaintiff immediately afterward, on the same day, gave due notice of presentment by him, and non-payment by the drawee to the defendant, and then, at the same time, demanded payment of him which was refused. At the time the attorney of Briggs sold and delivered the checks to plaintiff, and received full value for the same from him, no statement or intimation was made to plaintiff how the checks had been acquired, or that payment had been demanded on the checks and refused, and no evidence was given or offered in behalf of defendant tending to establish that plaintiff had any knowledge or intimation of the manner in which, or from whom, the checks had been acquired by the attorney of Briggs, or that the same had been presented and payment refused. The plaintiff was sworn as a witness in his own behalf, and offered his testimony, as follows: " That at the time he obtained the checks he received them without any notice that they had been lost at ' faro' —without any notice that they had before then been presented for payment. That he received them from Lloyd

(the attorney) as so much money, for which he gave his note for the like amount in payment, and had no notice of any matter in connection with the checks which might tend to impeach or invalidate them, or lead him to suspect that there was any defence against them existing in favor of Hanson or the defendant." To this offered evidence counsel for defendant objected that the proposed evidence was immaterial, upon the ground that the proof in the case, showing without any contradiction that the checks had been presented by Briggs for payment, and payment thereof refused by the drawee and drawer before the transfer of them to plaintiff, the plaintiff could not recover them against the defendant, admitting him to have received them in good faith, for a valuable consideration, and without notice.

The Court sustained the objection and excluded the evidence, to which ruling plaintiff's counsel duly excepted. The evidence being closed, the Court, of its own motion, entered judgment of nonsuit against the plaintiff, on the ground that the evidence disclosed that the checks were dishonored before their transfer to the plaintiff; from which judgment, and subsequent order denying plaintiff's motion for a new trial, comes this appeal.

As a general rule, it is well settled that a *bona fide* holder of a negotiable instrument for a valuable consideration, without any notice of facts which tend to impeach its validity as between the antecedent parties thereto, if he takes it by transfer before the same is overdue or presumptively dishonored, holds the title unaffected by these facts, and may recover thereon, although, as between such antecedent parties, the legal validity of the instrument, or the title thereto, may be successfully impeached. (*Swift* v. *Tyson*, 16 Pet. U. S., 15; Story on Prom. Notes, Sec. 191; *Goodman* v. *Simmons*, 20 Howard U. S., 364-5.)

A promissory note payable on demand, a bank check or a certificate of deposit, is not presumptively dishonored until the lapse of a reasonable time after payment thereof may be legally demanded; and what shall be deemed a reasonable time is a question of law for the Court, when

there is no dispute about the facts.    In a case of a bank
check, where the drawer and drawee reside in the same
town or city, we are not aware of any case which fixes such
reasonable time within more restricted limits than the close
of business hours of the day succeeding that on which pay-
ment might have been first legally demanded. *(Gough v.
Staats,* 13 Wend. 549; *Mohawk Bank* v. *Broderick,* Id. 133;
*Rothschilds* v. *Corney,* 9 B. & C. 388.)    Although between
the time when payment may first be legally demanded
and the expiration of the reasonable time within which
payment may be properly demanded before presumptive
dishonor, the check may be actually dishonored by refusal
to pay on demand being made; yet, to charge the check with
the infirmity of dishonor, in the hands of a party to whom
the same is transferred for a valuable consideration, before
the expiration of the reasonable time which must elapse
before presumptive dishonor, notice of the fact of previous
actual dishonor must be brought home to him, or he holds
it free from taint of dishonor.

"Actual dishonor may take place at any moment after the
paper may be presented and demanded.    But this dishonor,
accurately speaking, does not take place, or at least is not
completed merely by refusal to pay, unless the party subse-
quently taking the paper had some notice or knowledge of
this demand and refusal.    If the paper be demanded and
refused within that period, before the termination of which
there is no presumption of dishonor, a taker after such
demand and within that period, having no notice or knowl-
edge of the demand or refusal, cannot be affected." ( 2 Par-
sons on Notes and Bills, p. 270.)

As in case of a bill drawn payable at a future day, if it
be presented to the drawee for acceptance before maturity,
and acceptance refused, without indorsement of such non-
acceptance on the bill; if the party so presenting the same
thereafter endorse and deliver it before maturity, and with-
out due notice to the drawer of its non-acceptance to
another, for a valuable consideration, who has no notice or
knowledge of the previous dishonor, such indorsee takes the

bill relieved of the infirmity of dishonor and want of notice. *(O'Keefe* v. *Dunn,* 6 Taunton R. 305; *Goodman* v. *Harvey,* 4 Add. & El. 870.) And so in case of a promissory note payable on demand, says Chief Justice Parker, in *Field* v. *Nickerson:* "He who takes for a valuable consideration a note of hand negotiable within a day or two after it is signed, would not be subject to the claims of the promissor in the nature of a set-off, on the principle that the note was overdue when indorsed, because the maker gives a credit to the note for a reasonable time after it is signed; and if he should pay it immediately after it is signed, leaving the note assignable in the hands of the promisee, without any indorsement thereon, he would perhaps be holden to pay it again to the indorsee, for he would be considered as promising to pay the contents to any assignee who should within a reasonable time make demand of payment." (13 Mass. 137.) So, in the present case, at the time the judgment of nonsuit was entered, the evidence before the Court unequivocally established that plaintiff received the checks before the lapse of the reasonable time within which demand for payment might be made of the drawer, paid full consideration therefor, and without notice having been brought home to him of the fact that payment had been demanded of the drawee and refused, or any other fact or circumstance tending to impeach the validity of the title thereto as between antecedent parties. Hence, upon the accepted evidence, without that offered in behalf of plaintiff and rejected by the Court, he was entitled to recover. *(Palmer* v. *Goodwin,* 5 Cal. 458.)

The judgment of nonsuit and order denying a new trial must, therefore, be reversed and cause remanded.